Brandy A. Sargent (045713)
Brandy.Sargent@klgates.com
Michael B. Lubic (*pro hac vice* pending)
michael.lubic@klgates.com
Robert B. McLellarn (*pro hac vice* pending)
Robert.McLellarn@klgates.com
K&L GATES LLP
One SW Columbia Street
Suite 1900
Portland, Oregon  97204
Telephone: +1 503 228 3200
Facsimile: +1 503 248 9085


Attorneys for KSV Kofman Inc.
Foreign Representative

UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

| | |
|---|---|
| In re:<br>   Audible Capital Corp.<br>      Debtor in a Foreign Proceeding | Case No. 20-31521-pcm-15<br>CHAPTER 15 |
| In re:<br>   Avenir Trading Corp.<br>      Debtor in a Foreign Proceeding | Case No. 20-31523-pcm-15<br>CHAPTER 15 |
| In re:<br>   1892244 Alberta Ltd.<br>      Debtor in a Foreign Proceeding | Case No. 20-31524-pcm-15<br>CHAPTER 15 |
| In re:<br>   Avenir Sports Entertainment Ltd.<br>      Debtor in a Foreign Proceeding | Case No. 20-31525-pcm-15<br>CHAPTER 15 |
| In re:<br>   Avenir Sports Entertainment Corp.<br>      Debtor in a Foreign Proceeding | Case No. 20-31526-pcm-15<br>CHAPTER 15 |
| In re:<br>   Portland Winter Hawks, Inc.,<br>      Debtor in a Foreign Proceeding. | Case No. 20-31519-pcm-15<br>CHAPTER 15 |

KSV Kofman Inc. ("<u>KSV</u>"), in its capacity as court-appointed receiver (the "<u>Receiver</u>") of (1) Audible Capital Corp., (2) Avenir Trading Corp., (3) 1892244 Alberta Ltd., (4) Avenir Sports Entertainment Ltd., (5) Avenir Sports Entertainment Corp., and (6) Portland Winterhawks, Inc. (collectively, "<u>Debtors</u>"), based upon the Receivership Order dated May 7, 2020, entered by the Ontario Superior of Justice (Commerical List), Toronto, Canada, Court File No. CV-20-00640212-00CL (the "<u>Canadian Court</u>" and the "<u>Canadian Proceedings</u>"), and as authorized foreign representative of the above-captioned Debtors, by and through its undersigned counsel, has filed official form petitions (together, the "<u>Petitions</u>") pursuant to section 1515 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and now respectfully seeks entry of an order (the "<u>Recognition Order</u>"): (A) recognizing the Canadian Proceedings as foreign main proceedings pursuant to section 1517 of the Bankruptcy Code, thereby granting related relief pursuant to section 1520 of the Bankruptcy Code and additional relief pursuant to section 1521 of the Bankruptcy Code; or (B) alternatively, recognizing Canadian Proceedings as a foreign nonmain proceeding, as defined in section 1502(b) of the Bankruptcy Code, and granting additional relief available under section 1521 of the Bankruptcy Code (this "<u>Recognition Motion</u>").

## I.
## <u>JURISDICTION, VENUE, AND CORE ALLEGATIONS</u>

1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(a) and (b) and 11 U.S.C. § 1501 of the Bankruptcy Code.  Venue is proper in this district pursuant to 28 U.S.C. § 1410.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).  The statutory

predicates for the relief requested herein are sections 105(a), 362, 1517, 1519, 1520 and 1521 of the Bankruptcy Code.

2.     The Receiver, solely in its capacity as authorized foreign representative, and not in its personal or corporate capacity, consents to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## II.
## SUPPORT FOR THIS MOTION

3.     This Recognition Motion is supported by the conteporaneously filed Declaration of Noah Goldstein and the exhibits thereto, as well as the Petitions and their attachments, and the other pleadings and court records on file in this matter.

## III.
## BACKGROUND

### A.     The Structure and Assets of the Debtors.

4.     Debtor Audible Capital Corp. ("Audible"), is a Canadian company wholly owned by William Michael Gallacher ("Gallacher"). Audible is the direct parent company of Debtors Avenir Sports Entertainment Ltd. ("ASE Canada"), Avenir Trading Corp. ("Avenir Trading"), and 1892244 Alberta Ltd. ("1892"). Each of Audible, ASE Canada, Avenir Trading and 1892 (collectively, the "Canadian Debtors") is a company incorporated in the Province of Alberta, Canada. Gallacher, a resident of Canada, is the sole director of each of the Canadian Debtors.

5.     The final Canadian Debtor, ASE Canada, is the parent company of U.S. debtor Avenir Sports Entertainment Corp. ("ASE US"), a Nevada corporation.  ASE US is in turn the parent company of the Portland Winter Hawks, Inc. ("PWH" and, together with ASE US, the "US Debtors"), an Oregon corporation.

### B.     Winterhawks Operation and Key Contracts.

6.     PWH is the owner of the Portland Winterhawks (the "Winterhawks"), a junior ice hockey team based in Portland, Oregon that plays in the Western Hockey League (the "WHL"). The WHL is a major junior hockey league based in Western Canada and the Northwestern United States.  The WHL is one of three leagues that constitute the Canadian Hockey League, the highest level of junior hockey in Canada.  Although the remainder of the 2019-2020 WHL season has been cancelled due to the COVID-19 pandemic, the Winterhawks remain a successful hockey team. The Winterhawks and their WHL franchise rights are a valuable asset to the Debtors.

7.     The Winterhawks' business activites are primarly based in Canada.   The Winterhawks are one of only 8 of the CHL's 60 teams that are based in the United States.  Of the WHL's 22 teams, the Winterhawks are the only team based in Oregon, with four teams based in Washington and the other 17 based in Canada across British Columbia, Alberta, Saskatchewan, and Manitoba.  The WHL plays a 68-game season from September to March, followed by WHL and CHL championship playoffs, with the Winterhawks annually playing dozens of games in Canada spread evenly over the 6+ month season.

8.     Gallacher has been the CEO of PWH and managed the Debtors in his executive role from Canada.  As discussed herein, the Debtors' primary financial relationships, including their secured creditors, are located in Canada and subject to Canadian law.  The Debtors maintain Canadian Bank Accounts, including a PWH account with Royal Bank of Canada that had approximately $146,000 in the account as of May 31, 2019.

9.     The Debtors are also party to several ongoing contracts that are critical to maintaining the value of the Winterhawks.  First, PWH and Gallacher are parties to a Western Hockey League Ownership Transfer Agreement ("WHL Ownership Agreement") granting rights to PWH to own and operate the Winterhawks franchise.  Goldstein Decl., ¶ 20.  Gallacher executed

the WHL Ownership Agreement in 2008. *Id.* Without these WHL franchise rights, the Winterhawks would have no league in which to play, effectively destroying the value of the team.

10. The WHL Ownership Agreement provides that it can be terminated without notice if the franchise becomes bankrupt or is in receivership for longer than 10 days. *Id.* The Bylaws and Constitution of the WHL likewise provide, *inter alia*, that the franchise will automatically terminate if the member has a receiver appointed or if re-organization proceedings are instituted under the BIA. *Id.*, ¶ 21.

11. The Winterhawks' lease agreements for their home venues at Veterans' Memorial Coliseum and the Moda Center are also essential to their operations. Both leases provide for termination of PWH's lease rights in the event that PWH becomes insolvent or bankrupt. *Id.*, ¶ 23. In the event the leases are terminated, it would leave the Winterhawks without any rights to play in their long-time, centrally-located home venues.

**C.      Commencement of the Canadian Proceedings.**

12. On April 28, 2020 Bridging Finance Inc. ("Bridging") filed an Application for appointment of the Receiver (the "Application") as receiver over the property, assets and undertakings of the Debtors pursuant to section 243(1) of the *Bankruptcy and Insolvency Act*, R.S.C. 1985, c. B-3, as amended (the "BIA") and section 101 of the *Courts of Justice Act*, R.S.O. 1990, c. C.43 (the "CJA"), as amended. Bridging is the manager of Bridging Income Fund LP ("BIF"). BIF is an Ontario limited partnership established in November 2013. BIF and Bridging provide middle-market Canadian companies with alternative financing options to those offered by traditional lenders.

13. The Application was based on the Debtors' default on a promissory note and subsequent breach of a forbearance agreement between Bridging and the Debtors. Goldstein Decl.,

¶ 45.  Bridging had provided a C$20 million loan to the Debtors, as joint and several borrowers, pursuant to the terms of a promissory note, dated December 14, 2018 (the "Promissory Note"). Goldstein Decl., Ex. 15.

14.     As security for the loan and other debts, the Canadian Debtors granted Bridging a security interest in all of their personal property, assets, and undertakings, and the US Debtors granted Bridging a security interest in all of their personal property (with certain excluded assets). *Id.*, Ex. 17.  Audible, ASE Canada, and ASE US also each pledged all of their interests in all shares of their respective subsidiaries (including all shares of PWH) to Bridging as security for the loan. *Id.* at Exs. 18-20.  The share certificates are held by Bridging in Toronto, Canada.  *Id.*, ¶ 35.

### D.     The Receivership Order

15.     The Canadian BIA governs bankruptcy liquidations and provides for debtor reorganizations.  The BIA also authorizes a court to appoint a receiver upon application by a secured creditor. *Id.* § 243(1).  Such court-appointed receivers are given a mandate and powers that typically include: (1) taking possession and control of the property and assets of the debtor; (2) marketing and selling such property and assets; (3) managing, operating and carrying on the business of the debtor; (4) realizing on the debtor's property; and (5) distributing the proceeds to the stakeholders in accordance with the legal entitlement. The appointing court has broad discretion to authorize the receiver to "take any other action that the court considers advisable." *Id*. § 243(1)(c).

16.     On May 7, 2020, the Canadian Court entered the Receivership Order pursuant to section 243(1) of the BIA and section 101 of the CJA. Goldstein Decl., Ex. 1. Among other things, the Receivership Order empowers the Receiver to take control of and collect the property of the Debtors, to operate the Debtors' business, grants the Receiver access to the Debtors' books,

records, contracts, securities, and information, and imposes a stay of proceedings against the Receiver, the Debtors, and the Debtors' property, similar to the protections available under 11 U.S.C. § 362(a). *Id.* at 2-5, 8. The Receivership Order also provides that "all rights and remedies against the Debtors, the Receiver, or affecting the Property, are hereby stayed and suspended except with the written consent of the Receiver or leave of this Court," except for certain financial contracts, and that "no Person shall discontinue, fail to honour, alter, interfere with, repudiate, terminate or cease to perform any right, renewal right, contract, agreement, licence or permit in favour of or held by the Debtors." *Id.* at 8-9.

17. The Receivership Order also includes a request by the Canadian Court for "aid and recognition by any court . . . having jurisdiction in Canada, in the United States or elsewhere, to give effect to this Order and to assist the Receiver and its agents in carrying out the terms of this Order." *Id.* at 14. The Receivership Order also empowers the Receiver "to apply to any court . . . including in the United States, for recognition of this Order and the within proceeding for assistance in carrying out the terms of this Order, and the Receiver is authorized and empowered to act as a foreign representative in respect of the Debtors and the within proceeding for the purpose of having the within proceeding recognized in a jurisdiction outside of Canada . . . ." *Id.*

### E. The Chapter 15 Petitions

18. Notwithstanding the worldwide application of the stay imposed by the Receivership Order, the prohibitions related to the Debtors' contracts, and the grant of authority to operate the Debtors' businesses and administer their assets, there is a risk that the Debtors' creditors may attempt to take enforcement actions against the Debtors' assets located in the United States, terminate or interfere with U.S. contracts with the Debtors, or refuse to recognize and/or interfere with the Receiver's authority to operate the Debtors' businesses and administer their assets.

19.     To protect against these risks, the Receiver commenced these chapter 15 cases by filing the Petitions for each of the Debtors pursuant to 11 U.S.C. § 1504, 1509(a) and 1515(a). Pursuant to the Receivership Order, the Receiver is a foreign representative in a foreign proceeding, and hereby seeks entry of the Recogniton Order providing the following relief:

(a)     Recognition of the Canadian Proceedings as a foreign main proceeding as defined in section 1502(4) of the Bankruptcy Code;

(b)     Granting the Receiver the relief afforded under section 1520 of the Bankruptcy Code as is provided by right upon the recognition of the Canadian Proceedings as a foreign main proceeding;

(c)     To the extent not granted by section 1520, granting further additional relief as authorized by section 1521 of the Bankruptcy Code including, without limitation:

  (i)     A stay of commencement or continuation of any action or proceeding concerning Debtors, the assets, rights, obligations or liabilities of the Debtors, and KSV in its capacity as Receiver;

  (ii)    A stay of execution against the assets of the Debtors;

  (iii)   Entrusting the Receiver with the administration or realization of all or part of the assets of the Debtors within the territorial jurisdiction of the United States, and applying the terms of the Receivership Order to the Debtors, their creditors, the Receiver, and any other parties-in-interest;

  (iv)    Suspending the right of any person or entity, other than the Receiver, to discontinue, fail to honor, repudiate, terminate or cease to perform any right, renewal right, contract, agreement, license or permit in favor of or held by the Debtors;

  (v)     Suspending the right of any person or entity, other than the Receiver, to transfer or otherwise dispose of any assets of the Debtors;

  (vi)    Authorizing the Receiver to undertake the examination of witnesses, the taking of evidence, the production of documents, or the delivery of information concerning the assets, affairs, rights, obligations or liabilities of the Debtors; and

  (vii)   Extending all relief previously granted under section 1519(a).

20.     The Receiver respectfully submits that the Canadian Proceedings should be recognized as a foreign main proceeding as defined in section 1502(4) of the Bankruptcy Code. If,

however, the Court determines the Canadian Proceedings are not a foreign main proceeding (either in whole or in part), the Receiver seeks recognition of the Canadian Proceedings as a foreign nonmain proceeding, as defined insSection 1502(5) of the Bankruptcy Code, and requests that the Court grant the relief requested above under the Court's discretion pursuant to Section 1521 of the Bankruptcy Code.

## IV.
## BASIS FOR RELIEF REQUESTED

**A.**          **The Canadian Proceedings should be recognized as foreign main proceedings.**

21.      The Canadian Proceedings are entitled to recognition as foreign main proceedings under chapter 15 of the Bankruptcy Code because, among other things: (a) the Canadian Proceedings are a "foreign proceeding" under section 101(23) of the Bankruptcy Code, (b) the Receiver is a "foreign representative" under section 101(24) of the Bankruptcy Code; (c) the Petitions were filed in accordance with sections 1504 and 1509 of the Bankruptcy Code and meet the requirements of sections 1504 and 1515 of the Bankruptcy Code; and (d) the Canadian Proceedings are a "foreign main proceeding" because the Debtors have their center of main interest in Canada.

22.      To be recognized under chapter 15, a proceeding must qualify as a "foreign proceeding." 11 U.S.C. § 1517(a). Section 101(23) of the Bankruptcy Code defines a "foreign proceeding" as:

> a collective judical or administrative proceeding in a foreign country . . . under a law relating to insolvency or adjustment of debt in which proceeding the affairs of the debtor are subject to control o supervision by a foreign court, for the purpose of reorganization or liquidation.

The Canadian Proceeding fits squately within this definition. The Canadian Proceeding is a collective judicial proceeding brought in a foreeign country under a law reating to insolvency (the BIA) that is supervised by the Canadian Court. Indeed, the BIA is similar to Chapter 7 of the

Bankruptcy Code, as both are statutory regimes intended to facilitate the liquidation of a debtor, provide a "breathing spell" from creditors' collection efforts and a centralized process to assert and resolve claims against the debtor's estate, and provide a fair and equitable process for distribution to creditors in order of priority. *In re Metcalfe & Mansfield Alternative Investments*, 421 B.R. 685, 698 (Bankr. S.D.N.Y. 2010) ("The U.S. and Canada share the same common law traditions and fundamental principles of law. Canadian courts afford creditors a full and fair opportunity to be heard in a manner consistent with standards of U.S. due process.").

23.     Other courts have consistently recognized Canadian insolvency proceedings (including BIA proceedings) as foreign proceedings. See 11 U.S.C. § 1515(b); In re Calmena Energy Servs. Inc., No 15-30786, ECF No. 17 (Bankr. S.D. Tex. Mar. 5, 2015) (recognizing Canadian receivership proceeding as foreign proceeding); In re Poseidon Concepts Corp., No. 13-15893, ECF No. 60 (Bankr. D. Colo. May 15, 2013) (same); In re Nortel Networks, Inc., 469 B.R. 478, 487 (Bankr. D. Del. 2012) (the Court entered an Order recognizing the proceeding under the CCAA was a foreign main proceeding under chapter 15 of the Bankruptcy Code); In re Unique Broadband Sys. Ltd., No. 19-11321, ECF No. 18 (Bankr. D. Del July 8, 2019) (recognizing Canadian receivership as foreign main proceeding); In re Mundo Media Ltd., No. 19-11365, ECF No. 14 (Bankr. D. Del. July 11, 2019) (same); Metcalfe & Mansfield Alt. Invs., 421 B.R. at 688 ("It is clear that the Canadian Proceedings should be recognized as a foreign main proceeding."); In re Gandi Innovations Holdings, LLC, No. 09-51782-C, 2009 WL 2916908, at *1 (Bankr. W.D. Tex. June 5, 2009) (the "CCAA Proceeding is a foreign proceeding entitled to recognition under chapter 15 of the Code.").[1]

---

[1] For numerous other examples of U.S. courts recognizing Canadian insolvency proceedings a "foreign proceedings," see *In re GasFrac Energy Servs., Inc.*, No. 15-50161 (Bankr. W.D. Tex. Feb. 2, 2014), ECF No. 46; *In re Angiotech Pharm., Inc.*, No. 11-10269 (Bankr. D. Del. Feb. 22,

24. The chapter 15 petitions must be filed by a foreign representative. *See* 11 U.S.C § 1517(a)(2). Here, the Receiver is a proper "foreign representative" because it constitutes a "person or body . . . authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding," as defined under Section 101(24) of the Bankruptcy Code. The Canadian Court specifically authorized the Receiver to serve in this capacity, and even directed the Receiver to act as the Debtors' foreign representative. *See* Goldstein Decl., Ex. 1 at 14. The Court is therefore entitled to presume that the Receiver is a proper "foreign representative." *See* 11 U.S.C. § 1516(b).[2]

25. The Receiver here also satisfied the requirement that the foreign representative file a chapter 15 petition accompanied by (i) a certified copy of the decision commencing the foreign proceeding and appointing the foreign representative, (ii) a certificate from the foreign court affirming such order exists, or (iii) other acceptable evidence that the foreign proceeding exists and the foreign represenative has been duly appointed. *See* 11 U.S.C. § 1515(b). The Receiver has also satisfied the requirement that the petition be accompanied by a statement identifying all foreign proceedings known to the foreign representative. *Id.* 1515(c). Here, the Petitions attach a copy of the Receivership Order commencing the Canadian Proceedings and appointing the Receiver, and include a certification that the Receiver knows of no other foreign proceedings.

---

2011), ECF No. 83; *In re Canwest Global Communications Corp., et al.*, No. 09-15994 (Bankr. S.D.N.Y. Nov. 3, 2009), ECF No. 30; *In re SemCanada Crude Co.*, No. 09-12637 (Bankr. D. Del. Aug. 27, 2009), ECF No. 30; *In re Quebecor World Inc.*, No. 08-13814 (Bankr. S.D.N.Y. July 1, 2009), ECF No. 12; *In re Biltrite Rubber (1984) Inc.*, et al., No. 09-31423 (Bankr. N.D. Ohio Apr. 2, 2009), ECF No. 58; *In re MAAX Corp.*, No. 08-11443 (Bankr. D. Del. Aug. 6, 2008), ECF No. 37; *In re Destinator Techs., Inc.*, No. 08-11003 (Bankr. D. Del. June 6, 2008), ECF No. 43.

[2] Several courts have held a receiver appointed pursuant to BIA § 243(1) to be a duly authorized "foreign representative." *See, e.g., In re Poseidon Concepts Corp.*, No. 13-15893 (Bankr. D. Colo. May 15, 2013), ECF No. 60 (recognizing Canadian receivership proceeding as foreign proceeding); *In re Baronet U.S.A. Inc.*, No. 07-13821 (Bankr. S.D.N.Y. Jan. 10, 2008), ECF No. 15 (same).

Although certified copies of the Receivership Order are not yet available, the Receiver has certified his appointment in the Goldstein Declaration.

26.     The Canadian Proceedings should also be recognized as a "foreign main proceeding," as defined in sections 101(23) and 1502(4) of the Bankruptcy Code.  A foreign proceeding qualifies as a foreign main proceeding if "it is pending in the country where the debtor has the center of its main interests."  11 U.S.C. § 1517(b)(1).  When considering a debtor's center of main interests ("COMI"), courts consider the analogous concept of an entity's principal place of business or nerve center.  *Morning Mist Holdings Ltd. V. Krys (IN re Fairfield Sentry Ltd.)*, 714 F.3d 127, 132 n.10 (2d Cir. 2013).  As such, in determining a debtor's COMI, courts will look to factors such as the location of those who actually manage the debtor and the location of a debtor's assets, the location of the Debtors' creditors, and the jurisdction whose law would apply to most disputes, among other things.  *Id.* at 137.

27.     Applying this analysis, the Debtors' COMI is in Canada.  Gallacher is a Canadian resident and sole owner of Audible, which is the ultimate parent of all of the Debtors.  Four of the six Debtors are incorporated in Canada, do business in Canada, and have corporate representatives in Canada.  Gallacher is also the CEO of both U.S. Debtors, and manages and controls the U.S. Debtors from Canada in that executive role.  Gallacher personally executed the WHL Ownership Agreement on behalf of a Canadian company that was subsequently amalgamated into Audible.  *See* Goldstein Decl., ¶ 20.  The WHL is a Canadian franchise and the WHL Ownership Agreement is governed by Canadian law. Gallacher also executed the Promissory Note with Bridging in Canada in his capacity as CEO for all six Debtors, including PWH. *See id.*, Ex. 15.  The Debtors' primary secured obligations are governed by Canadian law.  PWH (in addition to other of the Debtors) also maintains a bank account at the Royal Bank of Canada.  *See id.*, ¶ 25.  Also all shares

of PWC have been pledged to secure the debts of its Canadian parent entities, and all physical share certificates are physically held by Bridging in Toronto. *See id.*, ¶ 35 & Ex. 20 at 2. Moreover, upon entry of the Receivership Order, the Debtors, and all of their assets, undertakings, and properties are under the exclusive dominion and control of the Receiver located in Toronto, Canada.

**B.  In the alternative, the Canadian Proceedings should be recognized as a foreign nonmain proceeding.**

28.    A foreign proceeding will be recognized as a foreign nonmain proceeding if "the debtor has an establishment within the meaning of section 1502 in the foreign country where the proceeding is pending." 11 U.S.C. § 1517(b)(2). Section 1502(2) defines "establishment" as "any place of operations where the debtor carries out a nontransitory economic activity." 11 U.S.C. § 1502(2). When it is apparent that an entity conducts operations in the country where a foreign proceeding is pending, courts will recognize the proceeding as a foreign nonmain proceeding if foreign main proceeding recognition is denied. *See In re Fairfield Sentry Ltd.*, 2011 WL 4357421, at *10 n.8 (S.D.N.Y. Sept. 16, 2011) (agreeing with the Bankruptcy Court that if main recognition were not granted, nonmain recognition would have been appropriate because the debtor had an establishment, "i.e. a local place of business").

29.    As discussed above, the Debtors clearly have an establishment in Canada because, among other things, the Debtors conduct a substantial part of their operations in Canada, are integrally part of a Canadian hockey franchise, and have substantial assets in Canada. Further, upon entry of the Receivership Order, the Debtors, and all of their assets, undertakings, and properties are under the exclusive dominion and control of the Receiver located in Toronto, Canada.

**C.**     **Additional relief under section 1521 is appropriate.**

30.     Upon recognition as foreign main proceedings, most of the requested relief is granted automatically under section 1520, including:

> (1) sections 361 and 362 apply with respect to the debtor and the property of the debtor that is within the territorial jurisdiction of the United States;

> (2) sections 363, 549, and 552 apply to a transfer of an interest of the debtor in property that is within the territorial jurisdiction of the United States to the same extent that the sections would apply to property of an estate;

> (3) unless the court orders otherwise, the foreign representative may operate the debtor's business and may exercise the rights and powers of a trustee under and to the extent provided by sections 363 and 552; and

> (4) section 552 applies to property of the debtor that is within the territorial jurisdiction of the United States.

11 U.S.C. § 1520(a).

31.     Further, "any appropriate" discretionary relief is available upon recognition of a foreign proceeding, whether or not a foreign proceeding is main, including all of the provisions of section 1521(a) ("Upon recognition of a foreign proceeding, whether main or nonmain, where necessary to effectuate the purpose of this chapter and to protect the assets of the debtor or the interests of the creditors, the court may, at the request of the foreign representative, grant any appropriate relief").

32.     In addition, under 11 U.S.C. § 1521(b), upon recognition of a foreign proceeding, whether main or nonmain, the court may entrust the distribution of all or part of the debtor's assets located in the United States to the foreign representative or another person, including an examiner, authorized by the court, provided that the court is satisfied that the interests of creditors in the United States are sufficiently protected.

33.     Certain of the relief under section 1521 may require the application of standards for injunctive relief. 11 U.S.C. § 1521(e). Thus, the Receiver must establish: (1) a likelihood of

success on the merits, (2) a likelihood of irreparable harm absent an injunction; (3) that the balance of equities tips in the Receiver's favor, and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010).  All four factors are satisfied here.

34.     There is a compelling case for recognition of the Canadian Proceedings as a foreign main proceeding as set forth *supra*, and incorporated herein by reference. As set out in more detail above, the Canadian Proceeding is a "foreign proceeding" and the Receiver is a "foreign representative" within the meaning of the Bankruptcy Code.  Additionally, the Petitions were filed in accordance with, and meet all the applicable requirements of, chapter 15 of the Bankruptcy Code. Finally, the Canadian Proceeding is a "foreign main proceeding" because the Debtors have their center of main interest in Canada.[3]  For these reasons, it is substantially likely that the Canadian Proceedings will be recognized and the Recognition Order entered.

35.     Further, these chapter 15 cases were commenced for the purpose of obtaining the assistance of this Court to give effect in the United States to the Receivership Order and other orders of the Canadian Court in the Canadian Proceedings. Although the Receivership Order implements a stay preventing parties from taking actions against the Debtors and their assets wherever located, the Debtors have assets in the United States that may be subject to enforcement actions by certain creditors and litigants that may not believe they are bound by the Receivership Order.  Accordingly, there is an acute and imminent risk that the Debtors and their creditors will suffer irreparable harm without injunctive relief in order to ensure a orderly administration of the Debtors' affairs in a single proceeding.  *See, e.g., In re Netia Holdings S.A.*, 278 B.R. 344, 352

---

[3] As noted above, even if this Court does not recognize the Canadian Proceeding as a "foreign main proceeding," the Debtors each hold an establishment in Canada and thus the Canadian Proceeding constitutes a "foreign nonmain proceeding."

(Bankr. S.D.N.Y. 2002) ("It is well established . . . that the dissipation of the finite resources of an insolvent estate constitutes irreparable injury."); *In re MMG, LLC*, 256 B.R. 544, 555 (Bankr. S.D.N.Y. 2000) ("[I]rreparable harm exists whenever local creditors of the foreign debtor seek to collect their claims or obtain preferred positions to the detriment of other creditors.").

36.     The balance of the harms strongly favors a grant of relief under section 1521.  As alluded to above, preserving the status quo by imposing the automatic stay, preserving contracts, and authorizing the Receiver to operate the Debtors' businesses will not prejudice creditors. Such relief will ensure the value of the Debtors' assets is preserved, protected, and maximized for the benefit of and fair distribution to creditors in the order of priority, without the "race to the courthouse" or "self-help" that centralized insolvency regimes such as the BIA and the Bankruptcy Code are specifically designed to forestall.

37.     Finally injunctive relief will serve the public interest because an orderly administration of the Debtors will maximize the value of assets for creditors and most effectivley protect all creditors' interests. *Cornfeld v. Investors Overseas Servs.*, Ltd., 471 F.Supp. 1255, 1259 (S.D.N.Y. 1979), *aff'd* 614 F.2d 1286 (2d Cir. 1979) ("American public policy would be furthered, for the firm policy of American courts is the staying of actions against a corporation which is the subject of a bankruptcy proceeding in another jurisdiction."); *see also Rehabworks, Inc. v. Lee (In re Integrated Health Servs., Inc.)*, 281 B.R. 231, 239 (Bankr. D. Del. 2002) ("In the context of a bankruptcy case, promoting a successful reorganization is one of the most important public interests."); *In re Lazarus Burman Assocs.*, 161 B.R. 891, 901 (Bankr. E.D.N.Y. 1993) ("The public interest, in the context of a bankruptcy proceeding, is in promoting a successful reorganization.").

**D.     <u>No Bond or Stay.</u>**

38.     The Court should not require a bond to grant the requested relief.  11 U.S.C. § 1522(b) directs that the Court "may subject relief granted under section 1519 or 1521 or the operation of the debtor's business under section 1520(a)(3) to conditions it considers appropriate, including the giving of security or the filing of a bond" but does not require the posting of a bond. Here, no bond should be required because the Receiver is carrying out its duties under the BIA and the Receivership Order, is akin to a trustee, and any bond would necessarily come from the Debtors' assets.  Just as the Bankruptcy Code does not require a trustee or debtor-in-possession to post a bond when seeking injunctive relief, the Receiver should not be required to post security to merely execute the Canadian Court's order to preserve the Debtors' assets.  *See* Federal Rule of Bankruptcy Procedure ("Bankruptcy Rules") 7065 (stating that injunctive relief debtor, trustee, or debtor in possession without compliance with Rule 65(c)); *Cf. S.E.C. v. Universal Financial*, 760 F.2d 1034, 1039 (9th Cir. 1985) ("While a district court has discretion to require a receiver to post a bond in appropriate circumstances, Investors have failed to demonstrate that posting a bond is necessary to protect their interests.  In our view, the main effect of requiring such a bond would be to deplete further the resources available to Investors and others with an interest in the receivership estate.").

39.     To the extent that any Bankruptcy Rule, including without limitation, Rule 7062, would stay the effectiveness of the Recognition Order, the Receiver requests that such stay be waived.  It is necessary for the Recognition Order to be effective immediately.

## V.
## PRAYER

Wherefore, the Receiver respectfully requests entry of an Order, substantially similar to the attached Recogniton Order and grant such other and further relief to which the Receiver is justly entitled.

Case 20-31519-pcm15    Doc 10    Filed 05/07/20

Dated: May 7, 2020

Respectfully submitted,

K&L GATES LLP

By:  /s/ Brandy A. Sargent

Brandy A. Sargent, Bar No. 045713
Brandy.Sargent@klgates.com
Michael B. Lubic
michael.lubic@klgates.com
Robert B. McLellarn
Robert.McLellarn@klgates.com

One SW Columbia Street
Suite 1900
Portland, Oregon  97204
Telephone:    +1 503 228 3200
Facsimile:    +1 503 248 9085

Attorneys for KSV Kofman Inc.
Foreign Representative

EXHIBIT A
PROPOSED ORDER

UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

In re:

Portland Winter Hawks, Inc., et al.,[4]

      Debtors in a Foreign Proceeding.

Case No. 20-31519-pcm-15

CHAPTER 15

(Jointly Administered)

## ORDER GRANTING RECEIVER'S MOTION FOR RECOGNITION OF FOREIGN PROCEEDING AND RELATED RELIEF

THIS MATTER comes before the Court for consideration of the *Motion for Recognition of Foreign Proceeding and Related Relief* (the "Recognition Motion"), which KSV Kofman Inc. ("KSV") filed in the above-styled and numbered chapter 15 cases as the court-appointed receiver (the "Receiver") and authorized foreign representative of the above-captioned Debtors. Upon consideration of the (i) the Recognition Motion, (ii) the Declaration of Noah Goldstein submitted therewith, (iii) the exhibits thereto, (iv) the Receivership Order entered in the Canadian Proceeding (the "Receivership Order"), (v) all other documents filed in support thereof, and (vi) the exhibits introduced at such hearings, testimony of witnesses, and the arguments of counsel, this Court finds and concludes as follows:

---

[4] The Debtors, along with the last four digits of each U.S. Debtor's tax identification number, are: Audible Capital Corp., Avenir Trading Corp., 1892244 Alberta Ltd., Avenir Sports Entertainment Ltd., Avenir Sports Entertainment Corp. (2366), and Portland Winter Hawks, Inc. (7055).

1

1.     Notice was proper and no party in interest made any response in opposition to the Recognition Motion, or if so, the relief requested in any such response was denied for the reasons stated on the record, and further finds that the relief requested in the Recognition Motion should be GRANTED.

2.     The "Debtors" are the following entities: (1) Audible Capital Corp., (2) Avenir Trading Corp. (3) 1892244 Alberta Ltd., (4) Avenir Sports Entertainment Ltd., (5) Avenir Sports Entertainment Corp., and (6) Portland Winterhawks, Inc. (collectively, "<u>Debtors</u>").

3.     On April 28, 2020, Bridging Finance Inc. ("<u>Bridging</u>") filed an Application (the "<u>Application</u>") for appointment of the Receiver as receiver over the property, assets and undertakings of the Debtors pursuant to section 243(1) of the *Bankruptcy and Insolvency Act*, R.S.C. 1985, c. B-3, as amended (the "<u>BIA</u>") in the Superior Court of Justice (Commercial List) (the "<u>Canadian Court</u>") Court File No. CV-20-00640212-00CL, seeking the appointment of KSV as receiver over all of the property, assets and undertakings of the Debtors (the "<u>Canadian Proceeding</u>").

4.     On May 7, 2020, the Canadian Court, Honorable Justice Hainey, entered the Receivership Order pursuant to which KSV was appointed as the Receiver and foreign representative for the Debtors.

5.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and (b) and 1334(a) and (b) and Sections 109 and 1501 of the Bankruptcy Code. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

6.     Venue is proper in this district pursuant to 28 U.S.C. § 1410(1) and (3).

7.     The Receiver is a person within the meaning of Section 101(41) of the Bankruptcy Code and is the duly appointed foreign representative of the Debtors within the meaning of Section 101(24) of the Bankruptcy Code.

8.     This case was properly commenced pursuant to Sections 1504 and 1515 of the Bankruptcy Code. The notice of the Recognition Motion was sufficient given the circumstances of these cases and the potential for irreparable harm to the Debtors.

9.     The Receiver has satisfied the requirements of section 1515 of the Bankruptcy Code and Bankruptcy Rule 2002(q).

10.     The Canadian Proceeding is entitled to recognition by this Court under section 1517 of the Bankruptcy Code.

11.     Canada is the center of main interests of the Debtors, and accordingly, the Canadian Proceeding is a "foreign main proceeding" as defined in section 1502(4) of the Bankruptcy Code, and is entitled to recognition as a foreign main proceeding under section 1517(b)(1) of the Bankruptcy Code.

12.     the Receiver is entitled to all the relief available under section 1520 of the Bankruptcy Code including, without limitation, application of the automatic stay under section 362 of the Bankruptcy Code and operation of the Debtors' business and exercise of the rights and powers of a trustee.

13.     The relief granted is necessary and appropriate, in the interest of the public and international comity, consistent with the United States public policy, warranted under sections 1517, 1520, and 1521 of the Bankruptcy Code, and will not cause any hardship to any party in interest that is not outweighed by the benefits of granting the requested relief.

14.     There is a substantial likelihood that with the relief granted herein, the Receiver will be able to successfully administer the Debtors or their assets under the provisions of the Bankruptcy Code in this chapter 15 bankruptcy case and the BIA in the Canadian Proceeding, which will benefit all stakeholders.

15.     Relief is needed to protect the assets of the Debtors or the interests of the creditors pursuant to 11 U.S.C. § 1521. Therefore, the Receiver is entitled to the additional relief afforded under Section 1521 of the Bankruptcy Code (the "1521 Relief").

16.     There is a substantial threat of irreparable injury if the 1521 Relief is not issued.

17.     Any threatened injury to the Debtors or their assets outweighs any damage the injunction might cause to the opponents. The 1521 Relief would actually benefit the Debtors' creditors by ensuring an equitable and orderly distribution of assets and facilitate the Canadian Proceeding.

18.     The 1521 Relief will not disserve the public interest. The 1521 Relief is in the public interest.

19.     All entities (as that term is defined in section 101(15) of the Bankruptcy Code), other than the Receiver and its authorized representatives and agents are hereby enjoined from:

  (a)     execution against any of the Debtors' assets;

  (b)     the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, arbitral, or other action or proceeding, or to recover a claim, including without limitation any and all unpaid judgments, settlements, or otherwise against the Debtors in the United States;

  (c)     taking or continuing any act to create, perfect, or enforce a lien or other security interest, set-off, or other claim against the Debtors or any of their property;

  (d)     transferring, relinquishing, or disposing of any property of the Debtors to any entity (as that term is defined in section 101(15) of the Bankruptcy

4

Code) other than the Receiver and its expressly authorized representatives and agents;

(e)     commencing or continuing an individual action or proceeding concerning the Debtors' assets, rights, obligations, or liabilities; and

(f)     discontinuing, modifying, failing to honor, repudiating, terminating or ceasing to perform any right, renewal right, contract, agreement, license or permit in favor of or held by the Debtors;

provided, that in each case, the foregoing injunctions shall be effective solely within the territorial jurisdiction of the United States.

20.     Subject to sections 1520 and 1521 of the Bankruptcy Code, the Canadian Proceeding and the Receivership Order, and the transactions consummated or to be consummated thereunder, shall be granted comity and given full force and effect in the United States to the same extent that they are given effect in Canada, and each is binding on all creditors of the Debtors and any of their successors and assigns.

21.     To the extent not granted by section 1520, the administration or realization of all or part of the assets of the Debtors within the territorial jurisdiction of the United States is hereby entrusted to the Receiver.

22.     The Receiver may undertake the examination of witnesses, the taking of evidence, the production of documents, or the delivery of information concerning the assets, affairs, rights, obligations or liabilities of the Debtors.

23.     Under section 1521(a)(6) of the Bankruptcy Code, all prior relief granted to the Debtors or the Receiver by this Court under section 1519(a) of the Bankruptcy Code shall be extended and shall remain in full force and effect, notwithstanding anything to the contrary contained therein.

24.     Notwithstanding anything to the contrary contained herein, this Order shall not be construed as enjoining the police or regulatory act of a governmental unit, including a criminal action or proceeding, to the extent not stayed under section 362 of the Bankruptcy Code.

25.     Notwithstanding any applicability of any Bankruptcy Rules, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

26.     The Receiver and its agents are authorized and empowered to take all actions necessary to effectuate the relief granted under this Order in accordance with the Recognition Motion.

27.     The Receiver, the Debtors and/or each of their successors, representatives, advisors, or counsel shall be entitled to the protections contained in sections 306 and 1510 of the Bankruptcy Code.

28.     The security provision provided in Rule 65(c) of the Federal Rules of Civil Procedure, made applicable through Rule 7065 of the Bankruptcy Rules, is unnecessary in this case and is therefore waived.

29.     This Court shall retain exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Order.

# # #

I certify that I have complied with the requirements of LBR 9021-1.

Presented by:

K&L GATES LLP

By:     /s/ Brandy A. Sargent
Brandy A. Sargent, Bar No. 045713
Brandy.Sargent@klgates.com
Michael B. Lubic
michael.lubic@klgates.com
Robert B. McLellarn
Robert.McLellarn@klgates.com