Brandy A. Sargent (045713)
Brandy.Sargent@klgates.com
John C. Rothermich (076183)
John.Rothermich@klgates.com
Michael B. Lubic (*pro hac vice* pending)
michael.lubic@klgates.com
Robert B. McLellarn (*pro hac vice* pending)
Robert.McLellarn@klgates.com
K&L GATES LLP
One SW Columbia Street
Suite 1900
Portland, Oregon 97204
Telephone: +1 503 228 3200
Facsimile: +1 503 248 9085


Attorneys for KSV Advisory Inc.
Foreign Representative

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF OREGON

| | |
|---|---|
| In re: <br><br> Audible Capital Corp. <br><br>    Debtor in a Foreign Proceeding | Case No. 20-31521-pcm-15 <br><br> CHAPTER 15 |
| In re: <br><br> Avenir Trading Corp. <br><br>    Debtor in a Foreign Proceeding | Case No. 20-31523-pcm-15 <br><br> CHAPTER 15 |
| In re: <br><br> 1892244 Alberta Ltd. <br><br>    Debtor in a Foreign Proceeding | Case No. 20-31524-pcm-15 <br><br> CHAPTER 15 |

| | |
|---|---|
| In re:<br><br>Avenir Sports Entertainment Ltd.<br><br>    Debtor in a Foreign Proceeding | Case No. 20-31525-pcm-15<br><br>CHAPTER 15 |
| In re:<br><br>Avenir Sports Entertainment Corp.<br><br>    Debtor in a Foreign Proceeding | Case No. 20-31521-pcm-15<br><br>CHAPTER 15 |
| In re:<br><br>Portland Winter Hawks, Inc.,<br><br>    Debtor in a Foreign Proceeding. | Case No. 20-31519-pcm-15<br><br>CHAPTER 15 |

## **DECLARATION OF NOAH GOLDSTEIN**

I, NOAH GOLDSTEIN, of the City of Toronto, in the Province of Ontario, Canada hereby declare as follows:

1. I am a Managing Director at KSV Kofman Inc. ("KSV"). KSV is the court-appointed receiver ("Receiver") and authorized foreign representative of (1) Audible Capital Corp., (2) Avenir Trading Corp., (3) 1892244 Alberta Ltd., (4) Avenir Sports Entertainment Ltd., (5) Avenir Sports Entertainment Corp., and (6) Portland Winterhawks, Inc., (collectively, "Debtors"), based upon the Receivership Order dated May 7, 2020, entered by the Ontario Superior Court of Justice (Commercial List), Court File No. CV-20-00640212-00CL (the "Canadian Court" and the "Canadian Proceedings"). A true and correct copy of the Receivership Order as entered by the Canadian Court is attached here to as Exhibit 1.

2.     The facts set forth herein are within my personal knowledge or determined from the face of the documents attached hereto as exhibits and from information and advice provided to me by third parties. Where information contained in this affidavit is based on information I have received from other sources, I have stated the source of that information, and in all such cases I believe that information to be true.

3.     This declaration is sworn in support of the Ex Parte Motion for Provisional Relief Pursuant to Sections 105(a) and 1519 of the Bankruptcy Code and the Motion for Recognition of Foreign Proceeding and Related Relief filed by the Receiver in this action.

4.     All currency references in this affidavit are to Canadian dollars, unless otherwise noted.

**KSV**

**5.**     KSV is an Ontario, Canada corporation. It acts as court officer in various types of Canadian insolvency proceedings. An affiliate of KSV, KSV Advisory Inc., is a consulting firm providing advisory and restructuring services to distressed North American companies and their stakeholders.

**BRIDGING**

6.     Bridging Finance, Inc. ("Bridging") is the manager of Bridging Income Fund LP ("BIF"). BIF is an Ontario limited partnership established in November 2013. BIF and Bridging provide middle-market Canadian companies with alternative financing options to those offered by traditional lenders.

## THE CANADIAN DEBTORS

<u>Audible</u>

7. Debtor Audible Capital Corp. ("<u>Audible</u>"), is a holding company wholly owned by William Michael Gallacher ("<u>Gallacher</u>"). A true and correct copy of Audible's internally prepared financial statements as of December 31, 2019, is attached hereto as Exhibit 2.

8. The Receiver obtained these financial statements and various other exhibits to and information in this declaration from a Managing Director of Bridging, Lekan Temidire. Mr. Temidire received these documents and information from various officers and employees of the Debtors, including the Chief Financial Officer of the Canadian Debtors (as defined below), Jacquie Shivak ("<u>Shivak</u>"), as described in the Affidavit of Lekan Temidire (the "<u>Temidire Affidavit</u>") filed in connection with the Canadian Proceedings. The Temidire Affidavit is attached hereto as Exhibit 3.

9. In a share purchase agreement described below, Gallacher is listed as residing at 96 Montgomery Road, Etobicoke, Ontario, Canada. Mr. Temidare was informed by Sam Rappos, a lawyer with the Canadian law firm Chaitons LLP, counsel to Bridging, that Gallacher is the registered owner of this property. *See* Exhibit 3.

10. In connection with the financing provided to the Debtors by Bridging in December 2018, as described below, the Debtors provided to Bridging the corporate organization chart, a true and correct copy of which is attached hereto as Exhibit 4 (the "<u>Org. Chart</u>").

11. The Org. Chart showed that Audible was the direct parent company of Avenir Sports Entertainment Ltd. ("<u>ASE Canada</u>"), Avenir Trading Corp. ("<u>Avenir Trading</u>"), Avenir Sports International Corporation ("<u>ASI</u>"), 1957932 Alberta Ltd. ("<u>1957</u>"), and 1892244 Alberta Ltd. ("<u>1892</u>").

12.     Mr. Temidare was advised by Mr. Rappos that on November 20, 2019, Audible Capital Corp., 1957 and ASI amalgamated to become Audible.

13.     Each of Audible, ASE Canada, Avenir Trading and 1892 (collectively, the "Canadian Debtors") is a company incorporated in the Province of Alberta, Canada. Gallacher is the sole director of each of the Canadian Debtors. The registered office for all of the Canadian Debtors (other than ASE Canada) is the Calgary, Canada office of Burnet, Duckworth and Palmer LLP. The registered office for ASE Canada is the Calgary, Canada office of Greenfields Law. True and correct copies of Corporate Registration System search results for each of the Canadian Debtors obtained on April 20, 2020 are attached hereto as Exhibit 5.

14.     As set out below, all of Gallacher's shares in Audible, and all of Audible's shares in the other Canadian Debtors, have been pledged to Bridging, and the share certificates are located in Bridging's office in Toronto.

Avenir Trading

15.     Avenir Trading's only source of revenue in 2019 was fees for "management consulting" and it had limited assets other than intercompany receivables, as confirmed in the internally prepared financial statements as of December 31, 2019 provided to Bridging by Shivak, CFO of the Canadian Debtors. A true and correct copy of Avenir Trading's financial statements is attached hereto as Exhibit 6.

1892

16.     1892's only asset is a loan due from its shareholder, and it had no revenue in 2019 and less than $200 in financing expenses, as confirmed in the internally prepared financial statements as of December 31, 2019 provided to Bridging by Shivack. A true and correct copy of 1892's financial statements is attached hereto as Exhibit 7.

5
304969135.6

Case 20-31519-pcm15    Doc 11    Filed 05/07/20

ASE Canada

17. ASE Canada is the parent company of the Respondent, Avenir Sports Entertainment Corp. ("ASE US"), a Nevada corporation. ASE Canada generated no revenue in 2019 and its primary asset is its ownership of ASE US, as confirmed in the internally prepared financial statements as of December 31, 2019 provided to Bridging by Shivack. A true and correct copy of ASE Canada's financial statements is attached hereto as Exhibit 8.

**THE US DEBTORS**

18. Based on the information that has been provided to Bridging by Gallacher and Shivack, the sole asset of ASE US is its shares in its wholly owned subsidiary, Portland Winter Hawks, Inc. ("PWH" and together with ASE US, the "US Debtors"), an Oregon corporation. A true and correct copy of a Nevada Certificate of Existence with Status in Good Standing for ASE US obtained on April 23, 2020 is attached hereto as Exhibit 9.

19. PWH is the owner of the Portland Winterhawks (the "Winterhawks"), a junior ice hockey team based in Portland, Oregon that plays in the Western Hockey League (the "WHL"). The WHL is a major junior hockey league based in Western Canada and the Northwestern United States. The WHL is one of three leagues that constitute the Canadian Hockey League, the highest level of junior hockey in Canada.

20. Gallacher and the Canadian Debtors acquired PWH pursuant to a Western Hockey League Franchise Ownership Transfer Agreement, dated October 14, 2008 ("WHL Ownership Agreement"). The Receiver does not submit a copy of the WHL Ownership Agreement with this declaration due to confidentiality concerns. My review of the WHL Ownership Agreement, however, indicates that it was executed by Gallacher as the President of Avenir Capital Corporation, which, according to Mr. Rappos, was amalgamated into Audible in 2019. The WHL

6

304969135.6

Case 20-31519-pcm15    Doc 11    Filed 05/07/20

Ownership Agreement further provides that the Winterhawks franchise is subject to termination without notice if the club becomes bankrupt or is in receivership for a period exceeding ten days.

21. The Winterhawks WHL franchise is also subject to the Bylaws and Constitution of the Western Hockey League ("<u>WHL Bylaws</u>"). As with the WHL Ownership Agreement, the Receiver does not submit a copy of the WHL Bylaws with this declaration out of an abundance of caution due to confidentiality concerns. My review of the WHL Bylaws, however, indicates that they contain a provision automatically terminating franchise rights in the event of receivership.

22. The Winterhawks are one of only 8 of the CHL's 60 teams that have home venues in the United States. Of the WHL's 22 teams, the Winterhawks are the only team with a home venue in Oregon, with four teams in Washington and the other 17 based in Canada across British Columbia, Alberta, Saskatchewan, and Manitoba. The WHL plays a 68-game season from September to March, followed by WHL and CHL championship playoffs, with the Winterhawks annually playing dozens of games in Canada spread evenly over the 6+ month season.

23. The Winterhawks split their home games between two arenas, the Veterans Memorial Coliseum and the Moda Center. PWH is party, as lessee, to lease agreements for both arenas. Again, due to confidentiality concerns, the Receiver does not submit copies of these leases with this declaration. Both leases, however, provide for termination in the event of insolvency or bankruptcy.

24. As a result of the COVID-19 global pandemic, on March 18, 2020, the WHL cancelled the remainder of the 2019-2020 regular season. At that time, the Winterhawks were the first-place team in the WHL. As explained further below, the Receiver has no present plans to cause PWH to cease operations, terminate employees, or refrain from making payments on its obligations when due in the ordinary course of business.

25. Based on my review of financial statements for PWH as of May 31, 2019 provided to Bridging by Doug Piper, president of PWH, PWH has a Canadian bank account with Royal Bank of Canada ("RBC") that had approximately $146,000 in the account as of that date. Due to confidentiality concerns, a copy of the PWH financial statements are not being filed herewith, but will be filed separately under seal.

26. On April 23, 2020, Mr. Piper confirmed to Mr. Temidire via e-mail that PWH continues to maintain its RBC bank account in Canada. A true and correct copy of that e-mail, which was obtained from the Temidire Affidavit, is attached hereto as Exhibit 14.

**RELATIONSHIP WITH BRIDGING**

<u>Loan and Security</u>

27. I am informed by Bridging that in December 2018, Bridging was contacted by an investment firm with respect to a potential lending opportunity with the Debtors. I am further informed by Bridging that the Debtors were seeking a short term secured loan of $20.0 million to support a few initiatives, including exercising share options in an existing subsidiary, repaying certain secured indebtedness, capital for private equity investments, and the buildout of a new arena for the Lausanne Hockey Club in Lausanne, Switzerland.

28. Bridging agreed to provide a $20.0 million loan (the "<u>Loan</u>") to the Debtors, as joint and several borrowers, pursuant to the terms and conditions of a promissory note (the "<u>Promissory Note</u>") dated December 14, 2018, a true and correct copy of which is attached hereto as Exhibit 15. The Canadian Debtors also granted to Bridging a demand debenture dated December 14, 2018 (the "<u>Demand Debenture</u>"), a true and correct copy of which is attached hereto as Exhibit 16.

29. As set out in the Promissory Note and the Demand Debenture, the Loan was repayable on the earlier of demand and December 14, 2019.

30. As security for payment by the Debtors of all debts and liabilities owed by them to Bridging, including the Loan:

(a) the Canadian Debtors granted to Bridging, in the Demand Debenture, a security interest in all of their presently owned and after acquired personal property, assets and undertakings; and

(b) the US Debtors granted to Bridging a security interest in all of their personal property (with certain assets identified as excluded assets) pursuant to a security agreement dated December 14, 2018 (the "Security Agreement"), a true and correct copy of which is attached hereto as Exhibit 17.

31. In addition to the Demand Debenture, as security for the Loan, the Debtors granted, among other things, the following security documents in favor of Bridging (together with the Demand Debenture and the Security Agreement, the "Security"):

(a) a Pledge and Security Agreement dated December 14, 2018 granted by ASE Canada, wherein it pledged and granted a security interest to Bridging in all of its shares in ASE US, a true and correct copy of which is attached hereto as Exhibit 18;

(b) a Pledge and Security Agreement dated December 14, 2018 granted by Audible, wherein it pledged and granted a security interest to Bridging in all of its shares in Avenir Trading, 1892, ASI, 1957, ASE Canada, Synaptive Medical Inc., and Biosteel Sports Nutrition Inc., a true and correct copy of which is attached hereto as Exhibit 19; and

(c) an Equity Interest Pledge Agreement dated December 14, 2018 granted by ASE US, wherein it pledged and granted a security interest to Bridging in all of its shares in PWH, a true and correct copy of which is attached hereto as Exhibit 20.

32. As set out in a letter dated December 12, 2018, the WHL consented to PWH granting to Bridging a security interest over its property, including the Winterhawks franchise, and the share pledges granted by ASE US, ASE Canada, Audible and Gallacher in favor of Bridging. A true and correct copy of the December 12, 2008 letter is attached hereto as Exhibit 21.

33. On December 14, 2018, Bridging registered a UCC financing statement against ASE US in the State of Nevada with respect to all assets then owned or thereafter acquired by ASE US. A true and correct copy of the Nevada UCC search result for ASE US obtained on April 29, 2020 is attached hereto as Exhibit 22.

34. On December 14, 2018, Bridging registered a UCC financing statement against PWH in the State of Oregon with respect to all assets then owned or thereafter acquired by PWH. A true and correct copy of an Oregon UCC search result for PWH obtained on April 23, 2020 is attached hereto as Exhibit 23.

35. All of the share certificates pledged by Gallacher, Audible and ASE US in favor of Bridging are located in Bridging's office in Toronto.

Amendments to the Loan

36. Pursuant to a letter agreement dated July 1, 2019 between the Debtors and Bridging, a true and correct copy of which is attached hereto as Exhibit 24, the parties agreed to, among other things, extend the maturity date for the Loan to March 31, 2020.

37. I am informed by Bridging that in November 2019, Gallacher informed Bridging that he intended to raise funds to repay the Loan in part by soliciting interest for the sale of the Winterhawks.

38. Pursuant to a letter agreement dated November 21, 2019, a true and correct copy of which is attached hereto and marked as Exhibit 25, the Debtors and Bridging agreed that, among other things:

    (a) Audible was to complete the sale of its shares in Swiss Entertainment by November 22, 2019 and pay to Bridging, on closing, the sum of $5.0 million, along with $596,720.88 to be added to an interest reserve; and

    (b) the Debtors would use their best efforts to sell the shares of PWH or the Winterhawks, with a formal sale process to start by January 6, 2020.

39. I am informed by Bridging that Audible failed to complete the sale of its shares in Swiss Entertainment by November 22, 2019. Gallacher advised Bridging that closing was delayed as a result of the need to coordinate among the lawyers for the three purchasers. As of the date hereof, the closing still has not occurred.

**DEMAND AND FORBEARANCE**

40. As Bridging has informed me, on February 29, 2020, the Debtors defaulted on the Loan by failing to make the monthly interest payment that was due to Bridging. After Bridging issued a demand for payment and subsequent negotiations, the parties entered into a forbearance agreement dated April 4, 2020 (the "<u>Forbearance Agreement</u>"), a true and correct copy of which is attached hereto as Exhibit 26. Gallacher executed the agreement for both U.S. Debtors. In the Forbearance Agreement, the Debtors, among other things:

(a) acknowledged and confirmed that the amount demanded was unconditionally owing to Bridging and that they did not dispute the amount;

(b) acknowledged and agreed that the Promissory Note and the Security were valid, binding and enforceable, and that they are in default of their obligations under the Promissory Note and the Security.

41. Bridging agreed to take no steps to enforce the Security until April 30, 2020, provided there was no event of default under the Forbearance Agreement. It is an event of default under the Forbearance Agreement if the Debtors failed to satisfy their obligations under the agreement. The Debtors had the benefit of independent legal counsel with respect to the Forbearance Agreement.

42. Under the Forbearance Agreement, the Debtors were required, among other things, to pay to Bridging by April 8, 2020 $5.0 million from the sale of Audible's shares in Swiss Entertainment, and the unpaid interest for the months of February and March 2020 in the amount of $596,720.87.

43. According to Bridging, the Debtors failed to make these payments to Bridging by April 8, 2020. As reflected in subsequent communications between Bridging, Gallacher and their attorneys, the ostensible sale of Swiss Entertainment was repeatedly delayed, despite reassurances by Gallacher and his attorney that closing was imminent.

44. As Bridging has informed me, as a result, on April 10, 2020, Bridging's attorney informed Gallacher's Swiss attorney that unless the transaction closed and the $5.0 million was wired to Bridging by 12:00 pm EST on April 15, 2020, Bridging would take steps to enforce its security. A true and correct copy of the e-mail dated April 10, 2020 is attached hereto as Exhibit 27.

45. Pursuant to section 7.1 of the Forbearance Agreement, the Debtors agreed that, upon the occurrence of an event of default, they irrevocably consented to the private or Court appointment of a receiver in respect of all of the property and assets of each of the Debtors.

12

304969135.6

Case 20-31519-pcm15    Doc 11    Filed 05/07/20

**THE CANADIAN RECEIVERSHIP PROCEEDING**

46. Based on the foregoing, Bridging, on April 28, 2020, filed in the Ontario Superior Court of Justice (Commercial List) in Toronto, Ontario, Canada (the "Canadian Court"), an Application Under Subsection 243(1) of the *Bankruptcy and Insolvency Act*, R.S.C. 1985, c.B-3, as Amended, and Section 101 of the *Courts of Justice Act*, R.S.O. 1990, c.C.43, as Amended, for the appointment of a Receiver ("Receivership Application"), together with a supporting affidavit, exhibits and other information. The proceeding arising from the Receivership Application is referred to as the "Canadian Proceeding."

47. After a hearing held on May 6, 2020, the Ontario Superior Court, Justice Hainey, granted the Receivership Application and entered the Receivership Order.

48. Among other things, the Receivership Order broadly:

   (a) Empowers the Receiver to take possession and control of all of Debtors' property and to manage and operate the Debtors' business, *see* paras. 3-4;

   (b) Orders the Debtors and their agents to provide documents and information concerning the Debtors' assets and business to the Receiver, *see* paras. 3, 5-6;

   (c) Bars commencing or continuing actions or process against the Debtors or their property, *see* paras. 9-10;

   (d) Orders that no party discontinue, fail to honor or repudiate any contract or other right of the Debtors, *see* paras. 11-12;

   (e) Requests that any court or tribunal having jurisdiction in Canada, the United States, or elsewhere, give effect to the Receivership Order, *see* para. 25; and

   (f) Orders that "the Receiver is authorized and empowered, as a foreign representative of the Debtors and the within proceeding, to apply to the United States Bankruptcy

Court for relief pursuant to Chapter 15 of the *United States Bankruptcy Code*, and any other provisions of the *United States Bankruptcy Code*," *see* para. 27.

**OTHER SECURED CREDITORS**

49. Bridging has been advised by Mr. Rappos that Bridging has:

    (a) the only registrations against the Canadian Debtors (other than Audible) under the Alberta Personal Property Security Act ("Alberta PPSA"); and

    (b) the only registration against PWH under the UCC in the State of Oregon.

50. I have been informed by Bridging that, with respect to Audible, in addition to Bridging's registrations, there are financing statements registered under the Alberta PPSA in favor of the following parties:

    (a) Bank of Montreal ("BMO"), with respect to all of Audible's present and after acquired property; and

    (b) Ford Credit Canada Leasing, with respect to a 2018 Ford Escape.

51. Pursuant to a postponement agreement dated December 17, 2018, BMO agreed to fully postpone and subordinate its security from Audible in favor of the security Audible granted to Bridging. A true and correct copy of the agreement is attached hereto as Exhibit 28.

**RECEIVER'S PLANS FOR PWH**

52. At present, the Receiver has no indication that PWH is financial distress apart from its involvement in the Bridging Loan. Accordingly, the Receiver views it as important to maintain the operations of PWH and the Winterhawks' franchise to preserve their value for the benefit of all creditors of the Debtors in the Canadian Proceeding.

53. Accordingly, the Receiver presently plans to continue PWH's normal operations (to the extent that normal operations are continuing in the current COVID-19 pandemic environment).

14
304969135.6

Case 20-31519-pcm15    Doc 11    Filed 05/07/20

The Receiver does not have any present intent to prevent PWH from making future payments on PWH's leases or WHL franchise obligations as they come due.

54. **I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct**.

Executed on May 7, 2020

                                                                  Noah Goldstein